UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                :
UNITED STATES OF AMERICA,     :
                :
     -v-        :     21 Cr. 239 (JPC)
                :
VINCENTE OTERO,        :     OPINION AND ORDER
                :
         Defendant.  :
                :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

   Defendant Vincente Otero has pleaded guilty to unlawful possession of a firearm following a felony conviction, and his sentencing is scheduled for March 9, 2022.  The parties dispute the proper calculation of his advisory sentencing range under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G").  According to the Government, the Court should apply a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B), because Defendant possessed the firearm in connection with another felony offense, *i.e.*, attempted criminal sale of a weapon in violation of New York law.  Defendant, however, argues that this enhancement should not apply because the commentary to section 2K2.1 prohibits subsection (b)(6)(B) from applying to "the explosive or firearms or trafficking offense."  U.S.S.G. § 2K2.1, cmt. n.14(C).  The United States Probation Department shares Defendant's position.

   For reasons that follow, the Court agrees with the Government's reading of U.S.S.G. § 2K2.1(b)(6)(B), and concludes that Application Note 14(C)'s reference to "the . . . firearms . . . offense" refers only to the underlying offense that gave rise to this conviction.  Because attempted criminal sale of a weapon is not "the . . . firearms . . . possession" offense to which Defendant pleaded guilty, as it requires separate and additional conduct, and because Defendant possessed

the firearm in connection with that other felony offense, section 2K2.1(b)(6)(B)'s enhancement applies.

## I. Background

### A. Facts

On December 2, 2020, at approximately 7:40 p.m., law enforcement received a report of an individual attempting to sell a firearm in a bodega in the Bronx.  Presentence Investigation Report ("PSR") ¶ 8.  That information came from a store employee ("Witness") who called 911 and reported observing an individual ("Individual-1") discussing a gun sale with another individual ("Individual-2") in the store.  *Id.*  When law enforcement responded, the Witness showed the officers surveillance videos that depict Individual-1 entering the store with Individual-2 and then pulling out a gun as the two men spoke.  *Id.* ¶ 10.  The videos further show Individual-1 wearing a North Face jacket that was mostly gold-colored with black near the shoulders.  *Id.* ¶ 11.

Law enforcement officers then searched for Individual-1 and, at approximately 8:04 p.m., they observed Defendant less than a block from the bodega wearing a gold North Face jacket with black shoulders.  *Id.* ¶ 12.  They also noticed that Defendant's physical appearance resembled that of Individual-1 in the store's surveillance videos.  *Id.*  The officers approached Defendant, and an officer frisked Defendant and felt a hard metallic L-shaped object on his person.  *Id.* ¶ 13.  An officer then removed from Defendant's pocket a loaded .38 Special caliber Taurus International model 85 revolver.  *Id.* ¶¶ 13, 14.  Defendant was arrested.  *Id.* ¶ 13.

### B. Procedural History

Because at the time Defendant had prior felony convictions, it was unlawful for him to possess a firearm that had been shipped or transported in interstate or foreign commerce.  *See* 18 U.S.C. § 922(g)(1); *see also* PSR ¶ 14 (explaining that the Bureau of Alcohol, Tobacco, Firearms

and Explosives determined that the firearm was not manufactured in the state of New York); *id.*
¶¶ 15-16 (explaining that Defendant's criminal records revealed November 3, 2004 convictions in
Bronx County Supreme Court for criminal sale of a controlled substance in the third degree and
for attempted burglary in the third degree, both of which resulted in a sentence of sixteen months'
to four years' imprisonment).  As such, Defendant was charged in this District by a criminal
complaint with violating section 922(g)(1) on March 2, 2021, Dkt. 1, and he was arrested on that
charge five days later on March 9, 2021.  On April 7, 2021, a grand jury sitting in this District
returned an indictment charging Defendant with unlawfully possessing a firearm following a
felony conviction, with that firearm in and affecting commerce, in violation of 18 U.S.C.
§§ 922(g)(1), 924(a)(2), and 2.  Dkt. 6 ("Indictment").

Defendant pleaded guilty to the Indictment before the undersigned on October 12, 2021.
*See* Dkt. 21 ("10/21/21 Tr.").  While Defendant did not enter into a plea agreement with the
Government, the Government did provide Defendant with a letter pursuant to the Second Circuit's
suggestion in *United States v. Pimentel*, 932 F.2d 1029 (2d Cir. 1991).  The *Pimentel* letter set
forth the Government's view, as of the time of Defendant's guilty plea, with respect to the
application of the Guidelines to his offense.  The Government anticipated a total offense level of
21, calculated as follows:  (1) a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A)
because Defendant committed the offense subsequent to a felony conviction for a controlled
substance offense; (2) a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because
Defendant possessed the firearm in connection with another felony offense, specifically, the
attempted criminal sale of a firearm in the third degree, in violation of New York Penal Law
sections 110 and 265.11; and (3) a three-level reduction pursuant to U.S.S.G. § 3E1.1 for
acceptance of responsibility.  *See* 10/21/21 Tr. at 16-18 (discussion of *Pimentel* letter with

3

Defendant at his guilty plea proceeding).  The *Pimentel* letter, of course, did not bind Defendant, the Probation Department, or the Court as to the appropriate Guidelines range.  *See id.* at 17.

At the conclusion of the guilty plea hearing, the Court raised the dispute that is at issue in this Opinion and Order: whether the Court should apply the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B).  *Id.* at 22.  Defendant's counsel mentioned the possibility of a hearing pursuant to *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), to resolve factual disputes on this issue.  *Id.* at 22.  The Court later scheduled a *Fatico* hearing for March 3, 2022.  Dkt. 28.  On February 23, 2022, however, Defendant filed his sentencing submission which indicated that "[a] [*Fatico*] hearing is not necessary as the resolution of [the application of section 2K2.1(b)(6)(B)] does not turn on a disputed *factual* issue."  Dkt. 29 ("Deft. Sub.") at 2.  The next day, the Government advised the Court that it did not anticipate calling any live witnesses at a hearing, and instead would rely on the recording of the 911 call made by the Witness, body camera footage of an officer who responded to the bodega, and surveillance footage from the bodega.  Dkt. 30.  The Court therefore adjourned the *Fatico* hearing *sine die* and directed the Government to submit any exhibits to the Court by March 2, 2022, Dkt. 31, which the Government did, Dkt. 32 ("Govt. Sub.").  The Court also permitted Defendant to submit any responsive exhibits by March 7, 2022, and also directed Defendant to advise the Court by March 7, 2022 if he wished to call any live witness to respond to the Government's submission.  Dkt. 31.  Defendant has not done so.

In the PSR, the Probation Department did not apply the four-level enhancement pursuant to section 2K2.1(b)(6) and thus arrived at an offense level of 17 and a resulting sentencing range of 37 to 46 months' imprisonment.  *See* PSR ¶¶ 22-32, 80.  The Government objected to the Probation Department's failure to apply that enhancement, while Defendant concurred with the Probation Department's determination.  *Id.* at p. 19.  After considering those positions, the

4

Probation Department maintained its conclusion that the enhancement was not warranted, explaining that Application Note 14(C) to section 2K2.1 "defines 'another felony offense' as an offense 'other than the explosive or firearms possession or trafficking offense.'" *Id.*[1]

In his sentencing submission, Defendant again concurs with the Probation Department's conclusion, arguing that the language of Application Note 14(C) "precludes the four-level enhancement" because the language of the relevant New York law criminalizing attempted criminal sale of a firearm "mirrors the definition of the 'trafficking offense' described in Application Note 14(C)." Deft. Sub. at 2-3. Defendant further observes that the attempted criminal sale of a firearm "could not occur without possession of that very same firearm," and therefore Defendant's "possession of the firearm was inextricably entwined with his ability to sell that firearm." *Id.* at 3. The Government counters by arguing that "attempted criminal sale of a firearm is not '*the* firearms possession' offense to which the defendant pled guilty." Govt. Sub. at 4 (emphasis added). Citing caselaw from the Eighth Circuit, the Government explains that Defendant "was not 'doomed' to 'automatically' attempt to sell his Taurus .38 special revolver when he illegally possessed it. He chose to do so." *Id.* (quoting *United States v. Walker*, 771 F.3d 449, 452-53 (8th Cir. 2014)).

## II. Applicable Law

While not required to follow the Guidelines, the Court still must consider the applicable Guidelines range in imposing Defendant's sentence. *See, e.g.*, *Gall v. United States*, 552 U.S. 38,

---

[1] While agreeing with the Probation Department's offense level calculation, Defendant "denie[d] that he was attempting to sell the firearm to another individual." PSR at p. 19. As noted, Defendant has not challenged this fact before this Court and has advised the Court that the resolution of the question of the application of the section 2K2.1(b)(2)(B) enhancement "does not turn on a disputed *factual* issue." Deft. Sub. at 2.

49 (2007).  As such, it is necessary to determine the correct Guidelines range in this case, as that is a factor to consider in arriving at the appropriate sentence.  *See* 18 U.S.C. § 3553(a)(4).

As indicated above, the applicable Guideline for Defendant's conviction is found at U.S.S.G. § 2K2.1.  That Guideline lays out a number of adjustments based on the specific characteristics of the offense.  Section 2K2.1(b)(6)(B) provides, as relevant here, that if the defendant "used or possessed any firearm or ammunition in connection with another felony offense," the offense level should be increased by four.  U.S.S.G. § 2K2.1(b)(6)(B).  In a portion not relevant here, section 2K2.1(b)(6)(B) also provides that the same result holds when a defendant "possess[es] or transfer[s] any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  *Id.*  Application Note 14(C) offers guidance for applying those provisions: "'Another felony offense', for purposes of subsection (b)(6)(B), means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  U.S.S.G. § 2K2.1, cmt. n.14(C).

### III. Discussion

The heart of this dispute is whether the attempted criminal sale of a firearm is excluded as "another felony offense" pursuant to Application Note 14(C).  The Court concludes that such an offense does not fall within the commentary's exclusion, which only applies to the *same* offense of conviction.  In reaching this holding, the Court joins the Fifth, Seventh, and Eighth Circuits on this issue.  *See Walker*, 771 F.3d at 450-53; *United States v. Jackson*, 741 F.3d 861, 863-64 (7th Cir. 2014); *United States v. Jackson*, 633 F.3d 703, 705-06 (8th Cir. 2011); *United States v. Juarez*,

6

626 F.3d 246, 254-55 (5th Cir. 2010); *United States v. Jones*, 528 F. App'x 627, 631-32 (7th Cir. 2013).

The Court starts with its factual findings relevant to its determination as to the application of section 2K2.1(b)(2)(B).  Defendant has stated that "the resolution of this issue does not turn on a disputed *factual* issue."  Deft. Sub. at 2.  The Government has provided the Court with evidence supporting its position that Defendant attempted to sell a firearm to Individual-2 in the Bronx bodega on December 2, 2022, specifically, a recording of the 911 call made by the Witness, body camera footage from an officer who responded shortly after the 911 call and interviewed the Witness, and surveillance videos from the bodega of the attempted gun sale.  Govt. Sub., Exhs. The Court afforded Defendant the opportunity to submit evidence or call live witnesses to respond to the Government's evidence, but he has not done so.  Nor has Defendant objected to the Government's evidence.

Notwithstanding Defendant's lack of opposition or objection to the Government's proof, the Court has independently reviewed that evidence.  The audio of the 911 call reveals that the caller, an employee at the store (*i.e.*, the Witness), reported that "two boys c[a]me into the store"— referring to Individual-1 and Individual-2—and that Individual-1 (*i.e.*, Defendant) "pulled out [a] gun and told [Individual-2], 'I want to sell it,'" referring to the gun.  The Witness also described Individual-1 to the 911 operator as wearing a yellow jacket.  The Witness asked for police to respond to the store so they could view the surveillance footage of the incident.  Police responded shortly thereafter and viewed the footage with the Witness.  Two videos captured the incident. One video showed two men walking into the store, with one (Individual-1) being shorter and wearing a yellow jacket with black shoulders and the other (Individual-2) being taller and wearing a blue jacket.  The Witness was working the cash register behind the counter as they entered.  The

two men then walked off to the side of the store, where the Witness continued to have a line of sight.

The second video is from another angle and shows the two individuals walking to a corner of the store.  There, Individual-1 removed what appears to be a firearm from his right jacket pocket and displayed it to Individual-2, before putting it back in the same pocket.[2]  The videos from the security cameras indicate that this transpired around 7:24 p.m.  Meanwhile, footage from the police officer's body camera indicates that he viewed the videos with the Witness at around 7:52 p.m.  At that time, the officer called out over his radio a description of Individual-1 as well as the direction in which the Witness advised that Individual-1 had walked after leaving the store.  Defendant was arrested shortly thereafter close to the store wearing a yellow North Face jacket, and the officers recovered a firearm from his person.

The Court concludes that this evidence establishes, by a preponderance of the evidence, that Defendant attempted to sell the firearm to Individual-2 in the bodega on December 2, 2020.  *See, e.g.*, *United States v. Salazar*, 489 F.3d 555, 558 (2d Cir. 2007) (sentencing court must "use the preponderance of the evidence standard . . . in finding facts relevant to sentencing for Guidelines calculation purposes").  Similarly, given that Defendant was arrested with the firearm about forty minutes after trying sell it to Individual-2, the Court also easily concludes he possessed that firearm "in connection with" its attempted criminal sale.

The next question is whether this conduct violated New York Penal Law sections 110 and 265.11.  Section 110.00 is the generic attempt provision under New York law: "A person is guilty of attempt to commit a crime when, with intent to commit a crime, he engages in conduct which

---

[2] The Government contends that Individual-1 removed the gun from the same pocket where law enforcement soon later recovered a gun from Defendant.  Govt. Sub. at 2.

tends to effect the commission of such crime." N.Y. Penal Law § 110.00. Section 265.11, in turns, covers criminal sale of a firearm in the third degree and provides:

> A person is guilty of criminal sale of a firearm in the third degree when such person is not authorized pursuant to law to possess a firearm and such person unlawfully either:
>
> (1) sells, exchanges, gives or disposes of a firearm or large capacity ammunition feeding device to another person; or
>
> (2) possesses a firearm with intent to sell it.

*Id.* § 265.11. Criminal sale of a firearm in the third degree is a class D felony in New York, *id.*, and an attempt to commit a class D felony is a class C felony, *id.* § 110.05. Defendant's conduct in the bodega—displaying and offering to sell a firearm to Individual-2—plainly falls within the scope of attempted criminal sale of a firearm in the third degree under New York law.

The Court turns to whether that attempted sale of a firearm qualifies as "another felony offense" within the meaning of section 2K2.1(b)(6)(B). As noted above, Application Note 14(C) excludes from the definition of "another felony offense" "*the* . . . firearms possession or trafficking offense." U.S.S.G. § 2K2.1, cmt. n.14(C) (emphasis added). The use of the definite article "the" is significant. The plain language of this commentary, read in conjunction with section 2K2.1(b)(6)(B), makes clear that it only excludes from the scope of "another felony offense" the very offense that gave rise to the instant conviction, not any possible firearms possession or trafficking offense. As the Eighth Circuit persuasively explained in *Jackson*:

> [T]he plain language of § 2K2.1(b)(6) casts a broad net. If the defendant used or possessed a firearm in connection with another felony, his offense level must be increased. Application note 14(C) narrows the scope only slightly, by defining "another felony offense" to exclude "the explosive or firearms possession or trafficking offense." Importantly, application note 14(C) does not exclude "any," "an," or "a" firearms possession offense. The word "the" is a definite article commonly employed to refer to something specific. *See United States v. I.L.*, 614 F.3d 817, 821 (8th Cir. 2010). The phrase "the . . . firearms possession . . . offense" in application note 14(C) most plainly refers to the underlying offense of

conviction—in [the defendant's] case, possession of a firearm by a felon.  Thus, the plain language of application note 14(C) excludes only the underlying firearms possession offense of conviction from the definition of "another felony offense."

633 F.3d at 705-06.

The history of the language of Application Note 14(C) strongly reinforces this plain reading.  The predecessor to Application Note 14(C) was found at Application Note 15, and provided: "As used in subsection (b)(5) [now subsection (b)(6)] . . . 'another felony offense' . . . refer[s] to offenses other than explosives or firearms possession or trafficking offenses."  U.S.S.G. § 2K2.1, cmt. n.15 (2005).  In other words, the commentary previously lacked the word "the" preceding "explosives or firearms possession or trafficking offenses."  This language led to a circuit split as to whether the commentary excluded all firearms and trafficking offenses from supporting the enhancement.  *See Walker*, 771 F.3d at 451-52.  The Fifth Circuit in *Juarez* summarized what followed:

> A 2006 amendment to the guidelines removed that note from the commentary, however, and the commentary to the 2008 version of the guidelines—the version applicable in [*Juarez*]—defines "another felony offense" as "any federal, state, or local offense, other than *the* explosive or firearms possession or trafficking offense."

*Juarez*, 626 F.3d at 254-55 (citing U.S.S.G. app. C amend. 691 (Supp. 2008), then quoting U.S.S.G. § 2K2.1, cmt. n.14(C) (2008)) (emphasis added in *Juarez*); *see also Walker*, 771 F.3d 451-52 (discussing the history of Application Note 14(C) and describing "the narrowing of the exclusion" in the commentary as "significant").  The evident purpose of this amendment—*i.e.*, adding the all-important definite article "the" to the commentary—"indicates the Sentencing Commission's intention to no longer exclude all explosive or firearms possession or trafficking offenses from the definition of 'another felony offense' under § 2K2.1(b)(6)."  *Juarez*, 626 F.3d at 255; *Jones*, 528 F. App'x at 632 ("[L]ike the Fifth Circuit [in *Juarez*], we conclude that the

addition [of the word "the"] was meant to end the categorical exclusion of firearms and explosives offenses from the definition of 'another felony offense.'"). As such, Application Note 14(C) "now excludes from the definition of 'another felony offense' only the possession or trafficking offense that serves as the basis for the defendant's conviction." *Juarez*, 626 F.3d at 255; *accord Jackson*, 741 F.3d at 863. Here, Defendant's instant conviction is not for attempted criminal sale of a firearm.

The caselaw that Defendant relies upon to the contrary is not persuasive or is inapposite. First, Defendant cites the Ninth Circuit's unpublished decision in *United States v. Falcon*, 553 F. App'x 737, 738 (9th Cir. 2014). *See* Deft. Sub. at 3. But *Falcon* rested its analysis on the Ninth Circuit's earlier decision in *Untied States v. Valenzuela*, 495 F.3d 1127 (9th Cir. 2007), which considered that earlier version of the commentary—*i.e.*, the version that lacked "the" before "explosives or firearm possession or trafficking offenses." *See Falcon*, 557 F. App'x at 738.[3] And Defendant's reliance on the Second Circuit's decision in *United States v. Young*, 811 F.3d 592 (2d Cir. 2016), also is unpersuasive in the circumstances presented here. *Young* addressed a different issue, double-counting enhancements for "trafficking" under section 2K2.1. The Second Circuit in *Young* concluded that section 2K2.1(b)(6)(B)'s enhancement for defendants who "possess firearms, or transfer them to others, with knowledge, intent, or reason to believe that they will be used or possessed in connection with another felony" cannot be applied when the other felony offense is a trafficking offense that already justified an enhancement under section 2K2.1(b)(5). *Id.* at 600-04 (2d Cir. 2016).[4] That holding has no application here. Not only did *Young* concern

---

[3] Notably, the *Falcon* court expressly did not decide whether the 2006 amendment abrogated *Valenzuela* due to a waiver by the government. *See id.*

[4] Other courts have shared similar concerns. *See, e.g.*, *United States v. Guzman*, 623 F. App'x 151, 153-55 (5th Cir. 2015); *United States v. Fugate*, 964 F.3d 580, 584-86 (6th Cir. 2020); *United States v. Johns*, 732 F.3d 736, 740 (7th Cir. 2013).

a different clause of section 2K2.1(b)(6)(B) that the one at issue here, but section 2K2.1(b)(5)'s enhancement for trafficking of firearms also does not apply to Defendant's offense.

The final question is related: whether Defendant's conduct in attempting to sell the firearm in violation of New York law is different than the mere possession in violation of section 922(g)(1), to which Defendant has pleaded guilty.  And of course these offenses differ.  A person can possess a firearm without intending to sell it, such as for self-defense or for more nefarious purposes.  *See Jackson*, 741 F.3d at 864 ("[S]ection 922(g)(1) requires proof of possession only; the transfer of the firearm was a separate act neither necessary to nor subsumed within his conviction for possession.").  As the Eighth Circuit explained in *Walker*, the question is whether the defendant was "doomed to automatically commit the additional felony when he violated 18 U.S.C. § 922(g) by possessing a firearm as a felony."  *Walker*, 771 F.3d at 452-53 (quotation omitted).  Defendant was not.  He could have possessed the firearm without trying to sell it, yet he opted otherwise.

For the same reasons, the Court is not persuaded by Defendant's argument that "the . . . attempted sale of a firearm . . . could not occur without possession of that very same firearm," making the two offenses "inextricably entwined."  Deft. Sub. at 3.  That argument looks at the issue from the wrong direction.  To show that the attempted criminal sale of a firearm in violation of New York law is not "another felony offense," Defendant must show that anyone who possesses a firearm also attempts to sell it, not that anyone who attempts to sell a firearm also possesses it. Otherwise, even armed robbery would be redundant of possession, as it entails possession of a firearm.  And again, of course not everyone who possesses a firearm also attempts to sell one.  *See Jackson*, 741 F.3d at 864.

## IV. Conclusion

For the foregoing reasons, the Court concludes that a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) applies to Defendant's conduct, and intends to apply that enhancement when calculating Defendant's offense level at sentencing on March 9, 2022.

SO ORDERED.

Dated: March 8, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge